IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | |
|---|---|
| AUSTIN CHAZ RAMSEY,         ) | |
|     Plaintiff,          ) | |
|                             ) | CIVIL ACTION NO. |
|    v.                      ) | 3:09cv919-MHT |
|                           ) | (WO) |
| ARNOLD GAMBER,            ) | |
|     Defendant.          ) | |

OPINION AND ORDER

In this lawsuit, plaintiff Austin Chaz Ramsey, a former football player at Auburn University, charged that defendant Arnold Gamber, a former athletic trainer at Auburn, failed to supervise his rehabilitation properly, in violation of state law. This lawsuit is again before the court, this time on Ramsey's motion to alter, amend, or vacate summary judgment, which was entered against him on February 7, 2011, based on insufficiency of evidence to support his claims. Ramsey v. Gamber, 2011 WL 486139, at *6 (M.D. Ala. Feb. 7, 2011) (Thompson, J.). The motion will be denied.

I. BACKGROUND

This court granted summary judgment in favor of Gamber because Ramsey failed to produce any evidence of negligent or wanton conduct by Gamber.[*]  After Ramsey sustained an injury during weight training at Auburn, Gamber collaborated with doctors to design a rehabilitation plan.  According to Ramsey, Gamber improperly ordered him to perform weighted exercises before it was safe for him to do so, in violation of doctors' instructions.

Ramsey could offer no direct evidence that Gamber had ordered any exercises exceeding the doctors' recommendations.  Instead, Ramsey relied on his own testimony that an unidentified weight-room assistant had told him to perform box-squat exercises while holding

---

\* Ramsey also asserted a claim of "interference with the physician-patient relationship."  The court found that there was neither precedent supporting the existence of this tort nor evidence to support the alleged claim.  Ramsey has apparently waived this claim as he did not renew any arguments related to the putative tort in his motion to alter judgment.

free weights.  Ramsey testified that the assistant had told him that the weighted squats were on a list used for Ramsey's physical therapy.  Ramsey argued that the assistant's statement provided circumstantial evidence that Gamber had ordered the use of weights in violation of the doctors' express instructions.  Ramsey also contended that the absence of a written rehabilitation plan produced in discovery suggested that Gamber had destroyed the plan because it revealed his misconduct.

On February, 7, 2011, the court ruled that Ramsey had not offered evidence sufficient to overcome Gamber's motion for summary judgment.  Ramsey's reliance on the statement of the weight-room assistant was misplaced because the statement was inadmissible hearsay.  Furthermore, Ramsey offered no evidence that Gamber had lost or destroyed the written rehabilitation plan in bad faith.  Without evidence of bad faith, the court could not presume that the documents contained information damaging to Gamber.  Since Ramsey offered no other

3

evidence of misconduct by Gamber, summary judgment was appropriate against Ramsey.

In support of his motion to alter judgment, Ramsey has offered the deposition of the previously unidentified weight-room assistant, Paul Creighton. This deposition was taken by Gamber on December 30, 2010, after the close of discovery and after the summary-judgment motion had been fully briefed.

Creighton's deposition directly contradicts Ramsey's own testimony. Creighton testified that he monitored Ramsey's exercises on June 2, 2008, the day he was allegedly injured. He stated that Ramsey did not use weights while performing box squats, nor was he instructed to do so. However, Creighton testified that Ramsey performed other weighted exercises--leg curls and arm curls on an incline bench. These weighted exercises were part of a list that the weight-room supervisor, Coach Yoxall, drafted for Ramsey at the beginning of the day.

## II. MOTION-TO-ALTER-JUDGMENT STANDARD

"The decision whether to alter or amend a judgment pursuant to Rule 59(e) [of the Federal Rules of Civil Procedure] is 'committed to the sound discretion of the district judge.'"  Mincey v. Head, 206 F.3d 1106, 1137 (11th Cir. 2000) (quoting American Home Assurance Co. v. Glenn Estess & Associates, Inc., 763 F.2d 1237, 1238 (11th Cir. 1985)).  However, "The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact."  Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007).  A party "cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment."  Michael Linet, Inc. v. Village of Wellington, Fla., 408 F.3d 757, 763 (11th Cir. 2005).

## III. DISCUSSION

Ramsey seeks to offer Creighton's deposition as new evidence that he was, in fact, required to perform weighted exercises contrary to his doctors' instructions. Ramsey raises no new legal arguments nor does he address any putative errors of law in the court's summary-judgment order. He seeks only to bring the undisclosed facts in Creighton's deposition to the court's attention in advance of a potential appeal. See San Francisco Residence Club, Inc. v. 7027 Old Madison Pike, L.L.C., 583 F.3d 750, 755 (11th Cir. 2009) ("Before [an appellate] court will consider alleged error at the trial level, the trial judge must first have the opportunity to pass upon the issue.").

Ramsey's motion to alter is due to be denied for three reasons. First, he was on notice that the court could not consider a deposition not admitted in evidence at summary judgment. Second, Creighton's testimony directly contradicts Ramsey's account of how he was

injured. Third, even if the court considered the deposition, there is still insufficient evidence to hold Gamber liable for Ramsey's injury.

Ramsey acknowledges that "a Rule 59(e) motion [cannot be used] to ... present evidence that could have been raised prior to the entry of judgment." Michael Linet, Inc. v. Village of Wellington, Fla., 408 F.3d 757, 763, (11th Cir. 1997). Instead, Ramsey contends that he was initially unable to take Creighton's deposition by the discovery deadline because Creighton had moved to the University of Colorado and was beyond subpoena power. Ramsey further asserts that he did notify the court during a pretrial conference held on January 14, 2011, that Creighton's deposition had recently become available. A failure to "even whisper" about newly discovered facts before entry of judgment precludes consideration of those facts on a motion to alter, O'Neal v. Kennamer, 958 F.2d 1044, 1047 (11th Cir. 1992); but Ramsey argues that he did effectively "whisper" about

the new deposition by raising the issue during the pretrial conference.

Ramsey's argument fails because the court put the parties on notice that it was considering only that evidence before the court and briefed by the parties. At the pretrial conference, the court explicitly stated in reference to Creighton's deposition "If I don't have it before me, I can't consider it." Trans. 15:7-8 (Doc. No. 83). Ramsey therefore knew that the summary-judgment motion would be decided on the record submitted by the parties at the close of discovery. If he believed Creighton's deposition was important to his claim, Ramsey had over a month before the entry of summary judgment to ask the court to consider the newly taken deposition. Ramsey's decision not to amend his filings suggests that he withheld the deposition for strategic reasons. Therefore, the court denies the motion to alter on the basis of newly available evidence; the evidence did not become "newly available" after entry of summary judgment.

Second, even if the court were to consider Creighton's deposition, the testimony does not help Ramsey because it refutes his account of the injury. Indeed, it is understandable that Ramsey might make a strategic decision to withhold Creighton's deposition from the court. At summary judgment, Ramsey relied solely on his own testimony that he was injured immediately after being ordered to do weighted squats. Far from supporting his claim, Creighton's deposition provides eyewitness testimony that Ramsey never performed the exercises that allegedly caused his injury, nor was he ordered to do so.

At summary judgment, the court must view the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). But in this case, it is unclear how Ramsey proposes that the court view the contradictory testimony. Either Ramsey or

Creighton is lying or mistaken in their description of Ramsey's exercise regimen on June 2, 2008. Now, Ramsey apparently asks the court to adopt Creighton's version over Ramsey's own account. Even if the court were to do so, Ramsey's claim would fail because there is no evidence from Creighton's deposition that the weight-room exercises caused Ramsey's injury. Contrary to Ramsey's account, Creighton testified that Ramsey never complained of any pain or stopped exercising; he completed his entire workout without incident. Creighton says he saw Ramsey return to the weight room again during the following week.

Finally, even if the court presumed that the leg and arm curls on the incline bench caused Ramsey's injury, his claims would fail because there is no evidence of misconduct by Gamber. Notably, the leg and arm exercises on the incline bench appear to conform to the rehabilitation plan Gamber created with Ramsey's doctors. The plan had a set progression, undisputed by the

parties:  Step 1 - running and jogging only, for two to three days; Step 2 - running combined with exercises exclusively involving Ramsey's own body weight; Step 3 - seated upper-body weight lifting and leg presses.  The progression would halt if Ramsey reported pain at any time.  Ramsey had previously completed Step 1 a few days before June 2, 2008. According to Creighton, Ramsey completed Step 2 earlier in the day before he began the seated arm and leg exercises.  Ramsey's seated leg and arm exercises on the incline bench appear to conform with the third step of the rehabilitation plan.

There is simply no evidence, either from Creighton's testimony or from the record at the close of discovery, that Gamber ever diverted from the rehabilitation plan developed with Ramsey's doctors.  Yoxall, not Gamber, was responsible for drafting athlete's daily regimen of exercises.  All witnesses have testified that Gamber did not supervise the weight room or weight-room assistants.  Creighton's testimony confirms that the "list" of daily

11

exercises Creighton used on June 2, 2008, was not the same document as the "master" rehabilitation plan created by Gamber and Ramsey's doctors; the list was drawn up by Yoxall on a sheet of yellow paper discarded at the end of the day.  Even if it was negligent to permit Ramsey to begin Step 3 on the same day as Step 2, there is simply no evidence that Gamber ever authorized the daily exercise regimen; that was Yoxall's duty.  Instead, Creighton's testimony tends to confirm that Gamber's plan complied with the rehabilitation sequence approved by Ramsey's doctors.

The court sympathizes with Ramsey's distress over the injury that cut short his athletic career.  It is deeply regrettable that Auburn University terminated his football scholarship because of an injury he had little ability to prevent.  Nevertheless, it is elementary to the law of negligence that the plaintiff must demonstrate how the defendant's misconduct caused his injury.  With

or without Creighton's deposition testimony, Ramsey can point to no evidence that would sustain his claims.

* * *

For the foregoing reasons, it is ORDERED that plaintiff Austin Chaz Ramsey's motion to alter judgment (Doc. No. 101) is denied.

DONE, this the 12th day of August, 2011.

                                 /s/ Myron H. Thompson
                                 UNITED STATES DISTRICT JUDGE